**Emory Worth BROWN, Jr., Plaintiff,**

v.

**Robert D. SHUPE, Defendant and Third Party Plaintiff,**

v.

**CBS, INC., a/k/a The Columbia Broadcasting System, a foreign corporation, Third Party Defendant.**

**Civ. A. 85–375–N.**

United States District Court,
E.D. Virginia,
Norfolk Division.

July 17, 1985.

Emory Worth Brown, Jr. pro se.

James A. Metcalfe, Asst. U.S. Atty., Norfolk, Va., Thomas E. Albro, Smith, Taggart, Gibson & Albro, Charlottesville, Va., for defendants.

## ORDER

CLARKE, District Judge.

This matter comes before the Court on the defendants' motion to dismiss or in the alternative for summary judgment. This matter has been briefed by both parties. Oral argument was scheduled on July 18, 1985; the plaintiff, however, failed to appear. Accordingly, the Court will rule on the motion based upon the arguments set forth in the briefs and pleadings.

The defendant has offered six separate grounds in support of his motions. The Court, after reviewing all the grounds, finds it unnecessary to comment on five of the grounds and bases its holding on the rule of law that truth is an absolute defense in an action for defamation. *Cox Broadcasting Corp. v. Cohn,* 420 U.S. 469,

95 S.Ct. 1029, 43 L.Ed.2d 328 (1975); *Curtis Pub. Co. v. Butts,* 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967); *Pilkenton v. Kingsport Pub. Corp.,* 395 F.2d 989 (4th Cir.1968).

In his complaint, the plaintiff alleges that his reputation and credibility were severely damaged by the false statements of the defendant made on the nationally televised CBS 60 MINUTES show.

The statements alleged to have been made or credited to the defendant are as follows:

REASONER: Now retired, Commander Bob Shupe, the Navy budget officer on the project, says there had been a lot of concern about Brown and the movie.

SHUPE: There was a lot of concern on the staff from my boss, the training folks. They were concerned about what had been purchased in support of this movie. I didn't know what was supposed to be purchased and what wasn't supposed to be purchased.

REASONER: Did you at some point in this questioning and wondering ... did you come to the conclusion that Emory Brown was a crook?

SHUPE: Well, I ... I didn't ... Let me put it this way. I don't want to say that. I mean ... answer that directly because I think he was, uh, dishonest.

\* \* \* \* \* \*

REASONER: The allegations were made after Brown, in a routine change of command, turned over the squadron to his Executive Officer, Commander Edward Andrews. Andrews and Shupe were friends and shared the same suspicions about Brown. They went to Navy investigators to tell them what they suspected.

If Brown had intended to return the TV sets to the squadron, Shupe said, he would have signed the property inventory forms. Brown said that he had directed his Maintenance Officer to account for the materials, but that officer just never got around to it.

It was also alleged that a check for $5,563.48 that Brown received from the movie company, ostensibly for out of pocket expenses, was really a payoff for his extra flying hours in behalf of the movie.

\* \* \* \* \* \*

SHUPE: I ... I ... I can't. I can't deal with it and I can't answer that. You know the only way you'll ever get an answer to that is to ask those three Captains who sat on the Board of Inquiry.

REASONER: Well, those three Captains released their own report in December. It said Brown was innocent of criminal wrongdoing and that the matter should have been handled within the Navy. And they flatly stated that the evidence presented supported in every instance Brown's version of what took place. The Captains said there was no evidence that Brown profitted monitarily by his actions. In effect, what those Captains concluded about Brown's role in the movie was that this whole matter could have been straightened out without destroying an officer's career if Commander Andrews and some other senior officers had gone to Brown directly for an explanation, as Navy policy requires.

■ The Complaint also states, however, that "as a result of the Federal proceedings ... plaintiff was convicted of accepting a gratuity." The plaintiff's federal conviction establishes, to the extent required by the law of defamation, the substantial truth of Shupe's statements. *Piracci v. Hearst Corp.,* 263 F.Supp. 511 (D.Md.1966), *aff'd* 371 F.2d 1016 (4th Cir. 1967).

Therefore, on the face of the pleadings, the plaintiff fails to state a claim upon which relief can be granted. Accordingly, the defendant's motion to dismiss is GRANTED and the Complaint is DISMISSED with prejudice. The Third Party Complaint is DISMISSED without prejudice.

IT IS SO ORDERED.