898 F.2d 144
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Ruben L. ALLMAN, Plaintiff-Appellant,
v.
WESTMORELAND COAL COMPANY, Defendant-Appellee.
Ruben L. ALLMAN, Plaintiff-Appellant,
v.
WESTMORELAND COAL COMPANY, INC., Defendant-Appellee.
 Nos. 89-2348, 89-2395.
 United States Court of Appeals, Fourth Circuit.
 Argued: Nov. 2, 1989.
Decided: Feb. 21, 1990.
Rehearing Denied April 9, 1990.
 
 Appeals from the United States District Court for the Western District of Virginia, at Big Stone Gap. Glen M. Williams, Senior District Judge. (C/A No. 87-0115-B)
 Charlie R. Jessee (Charlie R. Jessee & Associates, on brief), for appellant.
 Thomas P. Gies (Crowell & Moring, on brief); F. Thomas Rubenstein (Westmoreland Coal Company, on brief), for respondent.
 W.D.Va., 703 F.Supp. 1235.
 AFFIRMED.
 Before K.K. HALL and MURNAGHAN, Circuit Judges, and JOHN R. HARGROVE, United States District Judge for the District of Maryland, sitting by designation.
 PER CURIAM:
 
 
 1
 This case is on appeal from the United States District Court for the Western District of Virginia, Big Stone Gap Division. The trial court (The Honorable Glen M. Williams, U.S.D.J.) granted Westmoreland Coal Company's ("Westmoreland") motion for summary judgment on claims of wrongful discharge and defamation brought by Ruben L. Allman ("Allman"). Judge Williams found that Westmoreland had the requisite cause necessary to discharge Allman and that, because the discharge was proper, Allman could not meet his burden required by the defamation claim of showing falsity in any material respect in the statements issued by Westmoreland. For the reasons that follow, this Court affirms.
 
 FACTS
 
 2
 The facts of this case are not in dispute. Allman was employed as a section foreman at Westmoreland's Holton Mine, an underground coal mine located near Big Stone Gap, Virginia. On Saturday, November 29, 1986, Allman reported to work for his regular shift from 4:00 p.m. to 12:00 midnight at the Holton Mine. His supervisor, John Seabolt, an assistant mine foreman, instructed Allman and two hourly employees, Jack E. Christian ("Christian") and Barry Hill ("Hill"), to build a brattice, a partition used to control ventilation, in an area of the coal mine identified as the 3-Right panel and then to proceed to the area identified as the 2-Right panel to build additional brattices.
 
 
 3
 While Allman's crew was building brattices in the 3-Right panel, a piece of coal mining equipment called a longwall shield was scheduled to be transported along the main line to the 3-Right panel. Longwall shields are large machines that support the mine roof as coal is extracted. At the Holton Mine, these shields are transported by diesel locomotives coupled to flat-bed supply cars.
 
 
 4
 Most of the vehicles that travel inside the mine, including the personnel carrier used by Allman on the date in question, are electric-powered track vehicles that receive power from an overhead wire generally referred to as a trolley wire. There are no traffic signals along the trackways. To prevent the possibility of injury if equipment or people were to come into contact with an energized trolley wire, federal regulations and company procedure require the trolley wire to be "de-energized" by switching off the electric current from the outside when longwall equipment is being moved into the mine. See 30 C.F.R. Sec. 75.1003-2 (1987); Deposition of Ruben L. Allman at 119. Additionally, it is Westmoreland's policy that, during a longwall move, foremen are required to ensure that no one is on the main line track and that, before the main line track is used, someone on the surface is contacted. Affidavit of Jerry Light, Superintendent of Holton Mine ("Light Affidavit") at 1. Defendant's policy also forbids the foremen's use of any section of track which is on the direct route of the locomotives moving the longwall shield. Id.
 
 
 5
 At 7:20 p.m., Allman was informed by Carl Sturgill ("Sturgill"), the longwall maintenance foreman, that the locomotives hauling the longwall equipment would arrive inside the 3-Right panel at 8:00 p.m. After speaking with Sturgill, Allman moved his personnel carrier off the main track and onto a switch-out, or side track, installed off the 3-Right track so that the 3-Right track would be available for use by the locomotives.
 
 
 6
 Allman and his crew completed their work on the 3-Right panel at approximately 8:30 p.m. The locomotives hauling the longwall shield had not yet arrived in the 3-Right panel, so Allman checked the trolley wire and discovered that the trolley wire was still energized. Since the trolley wire should have been deenergized for the longwall move, plaintiff wrongly assumed that the longwall move had been canceled. Allman then decided to move the personnel carrier and his crew back onto the 3-Right track to proceed along the main line to their next assignment in the 2-Right panel. Contrary to company policy, Allman did not attempt to verify the status of the movement of the longwall shield even though there was a telephone connected with the surface approximately two thousand feet away from where Allman was working in the 3-Right panel.
 
 
 7
 While the personnel carrier being used by Allman and his crew was on the 3-Right track en route to the 2-Right panel, the carrier collided head-on with the locomotives that were bringing the longwall shield into the mine.[1] As a result of the accident, Christian was killed and Hill and Allman were injured. Following several investigations of the accident, Allman, as well as the driver of the locomotives, was discharged for violating company policies and safety rules.
 
 
 8
 After Allman was discharged, Westmoreland was contacted by several newspaper reporters regarding the accident on November 29, 1986, and the subsequent discharge of Allman and others. At least three newspapers printed stories based on statements made by Westmoreland representatives. Allman claims that the statements released by Westmoreland personnel defamed him.
 
 
 9
 Allman filed suit in the United States District Court for the Western District of Virginia on July 9, 1987, claiming wrongful discharge, defamation, emotional distress and loss of benefits. Defendant filed a motion for summary judgment after extensive discovery was taken by both parties. A response and a reply were subsequently filed. Judge Williams issued a memorandum opinion and order on the motion for summary judgment on January 9, 1989, without oral argument. The district court granted, inter alia, defendant's motion for summary judgment against Allman on both the wrongful discharge and defamation claims.[2] Judge Williams dismissed the remainder of the complaint with prejudice on February 24, 1989. Allman filed a timely appeal on March 13, 1989.
 
 LAW
 
 10
 Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party must show that "there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). The nonmoving party can rebut the moving party's showing "by any of the kinds of evidence listed in Rule 56(c), except the mere pleadings themselves...." Celotex, 477 U.S. at 324.
 
 
 11
 Summary judgment will be denied when "the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). An appellate court reviewing the grant or denial of a summary judgment motion applies the same standard as the trial court. Helm v. Western Maryland Railway Co., 838 F.2d 729, 734 (4th Cir.1988); Ballinger v. North Carolina Agricultural Extension Service, 815 F.2d 1001, 1004 (4th Cir.), cert. denied, 484 U.S. 897 (1987). The appellate court must reverse a grant of summary judgment if it appears from the record that there is an unresolved issue of material fact. Helm, 838 F.2d at 734. All inferences to be drawn from the underlying facts are to be viewed in the light most favorable to the party opposing the motion. Id. Allman argues that the trial court should have denied the motion for summary judgment because there was a genuine issue of material fact, i.e., whether Allman's dismissal was permissible under his employment contract with Westmoreland.
 
 1. Wrongful Discharge Claim
 
 12
 Virginia is an employment-at-will state. Miller v. SEVAMP, Inc., 234 Va. 462, 362 S.E.2d 915 (1987). Thus, unless there is a contract to the contrary, an employer or employee can terminate the employment relationship at any time, for any reason. Thompson v. American Motor Inns, Inc., 623 F.Supp. 409, 416 (W.D.Va.1985). For purposes of this appeal, defendant concedes that Westmoreland's Employee Relation Manual ("Manual") constituted a contract between the parties.
 
 
 13
 The Manual contains the following "Policy Statement":
 
 
 14
 Except in situations where the seriousness of the offense warrants immediate discharge, employees will, through counseling and disciplinary warnings, be made aware of problems and be given ample opportunity to correct such problems.[3]
 
 
 15
 When discharge becomes necessary, it is further our philosophy that discharge will be only for cause. Discharge for cause includes but is not limited to violations of Company policies, procedures or rules, violations of State or Federal laws or regulations....
 
 
 16
 Manual at 1.
 
 
 17
 The Manual specifies that: "It should be clearly understood ... that certain serious offenses may be cause for immediate discharge...." Manual at ----, Joint Appendix at 69. Westmoreland provides an illustrative list of offenses that the company considers "serious"; the list includes theft, unprovoked assault, dishonesty, distributing illegal drugs, and purposely damaging or destroying company property.
 
 
 18
 Westmoreland maintains that Allman violated company policy and was therefore permissibly dismissed. Defendant cites one example of a company policy violated by plaintiff as Westmoreland Virginia Operations, Health & Safety Rules ("Rules"), Rule Number Sixty-Nine ("Rule 69"), August 1983. That rule states:
 
 
 19
 FOREMAN: It should be the first duty of each and every foreman to guard the safety of himself and all employees entrusted to his care. Every foreman shall ENFORCE COMPLIANCE WITH HIS INSTRUCTIONS, TO THESE RULES, AND THE MINE LAWS. If a foreman should encounter any dangerous condition which is not governed specifically by these rules or the Mine laws, he shall take such action as he deems necessary and report the condition to his superior.
 
 
 20
 Rules at 15 (emphasis in original).
 
 
 21
 When a plaintiff presents no genuine issue of material fact, but merely a question of interpretation, summary judgment is warranted. See Von Komen v. Montgomery Ward & Co., 638 F.Supp. 739, 741 (C.D.Cal.1986); Lee v. Albemarle County School Board, 648 F.Supp. 744, 749 (W.D.Va.1986), aff'd, 829 F.2d 1120 (4th Cir.1987), cert. denied, 108 S.Ct. 2905 (1988); McKnight v. North Charles General Hospital, 652 F.Supp. 880, 881 (D.Md.1986); Thompson, 623 F.Supp. at 417. On appeal, Allman does not contest the district court's findings of fact, only the application of company policy to those facts.
 
 
 22
 Plaintiff argues, inter alia, that the trial judge failed to consider the "subjective standard" of Rule 69. Allman argues that the last sentence of Rule 69 gave him the discretion to "take such action as he deem[ed] necessary." Allman claims that it was reasonable for him to proceed with his crew to the next assignment in the 2-Right panel because he had concluded that the longwall shield move had been canceled. Juxtaposing the facts of this case with company policy, it is apparent that Allman cannot rely on the last sentence of Rule 69 to contest his discharge.
 
 
 23
 Rule 69 gives a foreman discretion to do what he deems necessary if and when the foreman encounters a dangerous condition not specifically governed by Westmoreland's rules or the Mine Laws. Initially, it must be noted that Allman did not encounter a dangerous condition: he created one. If Allman had followed company policy, he would not have been traveling along the main line at the same time that a locomotive was moving a longwall shield into the mine. This error is especially grievous considering the proximity of Allman to a telephone line that would have connected him to the surface; if Allman had called the surface he would have been informed that the longwall move was indeed in progress and that it was dangerous to be on the main line.
 
 
 24
 Pursuant to Rule 69, Allman, as foreman, was charged with the safety of himself and the employees entrusted to his care, Christian and Hill. On November 29, 1986, Christian was killed and Hill and Allman were hurt as a direct result of Allman's decision to proceed to the assignment in the 2-Right panel via the main line when he had been told that a longwall shield move was scheduled. As stated in the Manual, employees may be immediately dismissed for violating Westmoreland's policies, procedures or rules. Thus, Allman was permissibly fired by Westmoreland for violating company policy pursuant to the policy statement contained in the Manual and Rule 69. The district court's grant of Westmoreland's motion for summary judgment on the wrongful discharge is affirmed.
 
 2. Defamation Claim
 
 25
 Allman also argues that he was defamed by Westmoreland's statements that he was fired for violating company policy. Truth is a defense to a charge of defamation where the protected interest is personal reputation. Cox Broadcasting Corp. v. Cohn, 420 U.S. 469, 489 (1975). See also Pilkenton v. Kingsport Publishing Corp., 395 F.2d 989, 990 (4th Cir.1968); Brown v. Shupe, 629 F.Supp. 760, 760-61 (E.D.Va.1985). Allman conceded at oral argument that if this court affirmed the granting of summary judgment for Westmoreland, Allman could not prove falsity in Westmoreland's statement. Thus, the district court's grant of Westmoreland's motion for summary judgment on the defamation claim must also be affirmed because Allman cannot meet his burden of showing falsity in Westmoreland's statement.
 
 
 26
 AFFIRMED.
 
 MURNAGHAN, Circuit Judge, dissenting:
 
 27
 The panel holds that, as a matter of law, no reasonable jury could find that Ruben Allman was not careless in the performance of his mine duties. The panel therefore affirms the district court's summary judgment ruling against Allman's wrongful discharge and defamation claims. Because I consider the record to contain sufficient evidence to put the issue of Allman's carelessness in dispute, I would reverse the district court's judgment. I respectfully dissent.
 
 I.
 
 28
 On November 29, 1986, an accident occurred in Westmoreland Coal Company's Holton Mine. On one side of the unfortunate collision was a runaway train--two connected diesel locomotives carrying heavy longwall equipment into the mine and skidding out of control. On the other side was an electric personnel trolley, carrying three miners who were traveling to their next assignment. One of the three miners, Jack Christian, was killed when the impact of the collision hurled him out of the carrier and underneath the lead locomotive. The other two, Ruben Allman and Barry Hill, were injured.
 
 
 29
 Allman, the supervisor of the three-man crew, was fired, along with the train operator, for his role in the fatal accident. When he commenced his ill-fated shift, at 4:00 p.m. on November 29, 1986, he was assigned a crew of two men and was instructed to build two brattices, each in a different section of the mine. At 7:20 p.m. he was informed that, at 8:00 p.m., diesel locomotives would be transporting longwall equipment along the track system where his crew was at work. But by 8:30 p.m., when Allman's crew completed the first brattice, the locomotives had not arrived. Allman checked to see if the electric trolley wire, built over the track, was energized. Company procedure and federal regulations required that the electric trolley wire be de-energized during longwall moves for safety reasons. Because, on checking, Allman found that the trolley wire was still energized, he assumed that the longwall move had been canceled and took his crew to their next assignment. The personnel carrier, in which the trip to the next assignment was made, collided head-on with the runaway train. The runaway train had been allowed to enter the mine, contravening company procedure. Westmoreland terminated Allman's employment with the company.
 
 
 30
 Allman filed suit, claiming that Westmoreland did not have the cause to discharge him that was required under his employment contract. The district court rejected his contentions, holding that, even if he had a contract with Westmoreland, Allman's actions were "clearly a serious error in judgment and a violation of Health and Safety Rule No. 69," and thus constituted the requisite cause for discharge. The panel has affirmed the district court's judgment, reasoning that Allman was permissibly fired for violating Rule 69, as incorporated by the employment contract.
 
 II.
 
 31
 Rule 69 essentially provides that mine foremen are not to be negligent: "It shall be the first duty of each and every foreman to guard against the safety of himself and all employees entrusted to his care." The rule is incorporated into the alleged employment contract: "Discharge for cause includes but is not limited to, violations of Company policies, procedures or rules...."
 
 
 32
 I cannot agree that the only possible conclusion that a fact-finder could reasonably draw from the evidence is that Allman was negligent. Consider the following:
 
 
 33
 1. The Mine Health & Safety Administration conducted a comprehensive investigation into the accident. On November 29, 1986, it issued a report, which concluded as follows (emphasis added):
 
 
 34
 The accident was caused by management's failure to provide experienced, well-trained persons to operate the locomotives being used to transport equipment into the mine. Contributing factors to the severity of the accident were:
 
 
 35
 1. Management's failure to provide proper communication with persons in the mine to assure that other traffic was not using the same haulage roadway.
 
 
 36
 2. Management's failure to de-energize the trolley wire which instilled a false sense of security to other persons utilizing the same haulage roadway.
 
 
 37
 3. Management permitting the derails to be spiked closed thereby negating the safety factor they provided against runaway haulage equipment.
 
 
 38
 4. The personnel carrier not being adequately guarded to prevent persons from being thrown from the carrier.
 
 
 39
 MHSA, after a full investigation, did not even mention Allman's actions as a partial cause of the mishap. Indeed, the report emphasized that it was management's malfeasance that instilled a false sense of security in Allman.
 
 
 40
 2. Barry Hill, chairman of the safety committee at the Holton Mine, was a passenger in the personnel trolley at the time of the fatal accident. He swore, in an affidavit, that: "Mr. Allman violated no company policy or procedures and did not perform or cause to be performed any unsafe act...."
 
 
 41
 3. Hershiel Hayden, the vice-president of Westmoreland who gave the final approval to fire Allman, stated at his deposition that, to the best of his knowledge, Allman had not violated any company rule or regulation.
 
 
 42
 To my mind, the evidence puts the question of Allman's negligence at issue, and thus the question is one appropriate for the trier of fact, not for us. Rule 69 provides that Allman may be discharged only if he failed to guard the safety of his men.* I cannot accept the conclusion of my brothers that the question of whether Rule 69 was violated is not at issue.
 
 
 43
 I would therefore reverse the district court's grant of summary judgment on Allman's wrongful discharge claim. Because Allman's defamation claim is parasitic to the wrongful discharge claim, I would reverse the district court's judgment as to that claim as well.
 
 
 
 [1]
 At the time of the accident, the locomotives that were transporting the longwall shield into the mine were out of control. The driver of the locomotives was also fired by Westmoreland
 
 
 [2]
 Westmoreland did not move for summary judgment on the emotional distress count
 
 
 [3]
 Prior to the incident at issue in this case, Holton Mine's section foremen, including Allman, had been warned that their employment was in jeopardy because of poor mine productivity and safety records. The section foremen were warned that improvement was required
 
 
 *
 The panel also briefly refers to an unwritten company policy that was allegedly violated by Allman. Jerry Light, the mine superintendent, swore in an affidavit that the company had an unwritten policy "that foremen are to ensure that no one is on the main line track during a longwall move and that they are required to contact someone on the surface before using the main line."
 The unwritten policy, however, cannot here be used to support summary judgment. The existence of the unwritten policy is in dispute, as recognized by the district court. The following evidence, already outlined previously, supports Allman's position that there was no such unwritten policy: (1) Hill, chairman of the mine's safety committee, was with Allman when the accident occurred and swore that Allman violated no company policy; (2) Hayden, who gave the approval for Allman's discharge, stated that no policy had been violated by Allman; (3) MHSA made no reference to any unwritten policy in its comprehensive report; and (4) Light, during his deposition, did not refer to the allegedly unwritten policy, or any policy, when asked if Allman had violated any company policy.