## BENJ. FRICK v. COUNTY OF MERCER.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS
OF MERCER COUNTY.

Argued October 15, 1890—Decided January 5, 1891.

(*a*) Plaintiff brought assumpsit against Mercer county upon certain county bonds, part of a series issued to a railroad company on a subscription by the county to the company's stock, authorized by the act of April 21, 1846, P. L. (1850) 812, and its supplementary act of May 4, 1852, P. L. 605. The defendant pleaded non-assumpsit, on which issue:

1. The plaintiff having presented in his case in chief precisely the same facts before the court in Mercer Co. v. Railroad Co., 27 Pa. 389, wherein said bonds were adjudged illegal and void, he was not entitled to recover, in the absence of evidence that he was an innocent purchaser of the bonds for value and without notice of their illegality.

2. The position of the plaintiff was the same as if he had merely made out a prima facie case entitling him to a verdict, and the defendant had then proved the facts upon which this court, in the case cited, held that, under the recommendation of the grand jury, the county commissioners had no authority to issue the bonds.

3. A statute authorizing subscriptions by a county to the stock of a railroad company, subject to the restriction, inter alia, that the amount should be designated by the grand jury, a recommendation by the grand jury of a subscription not exceeding a certain amount, conferred upon the commissioners no authority to make any subscription whatever.

---

* " Let us have peace : " McKenney v. Fawcett, ante, 344.

Statement of Facts.

Before Paxson, C. J., Sterrett, Green, Clark, Williams, McCollum and Mitchell, JJ.

No. 202 October Term 1890, Sup. Ct.; court below, No. 78 March Term 1888, C. P.

On March 2, 1888, Benjamin Frick brought assumpsit against the county of Mercer, filing a statement of claim upon three bonds of the county issued for stock of the Pittsburgh & Erie Railroad Company. An affidavit of defence was filed, in which it was averred " that the issuance of the bonds upon which said claim is founded, was without authority of law and therefore void, and created no legal liability on the county to pay the same or any part thereof." The case was then put at issue, under the pleas of non-assumpsit and the statute of limitations.

At the trial on November 21, 1889, the plaintiff put in evidence the act of April 21, 1846, P. L. (1850) 812, incorporating the Pittsburgh & Erie Railroad company; act supplementary of May 4, 1852, P. L. 605; and next a paper filed at No. 19 May Term 1852, Court of Quarter Sessions, as follows:

" Recommendation of the grand inquest of Mercer county to the commissioners, to subscribe stock to the Pittsburgh & Erie Railroad Company.

" The grand inquest of the Commonwealth of Pennsylvania inquiring in and for the body of Mercer county at the May session, 1852, having taken into consideration the importance of the construction of the Pittsburgh & Erie Railroad to the several counties and the country through which it will pass, also the tendency to advance the value of property and develop the various resources of the country, would recommend that the commissioners of Mercer county subscribe to the capital stock of the Pittsburgh & Erie Railroad to such amount and under such restrictions as may be required by the act of assembly authorizing them to subscribe stock to said road, to an amount not exceeding $150,000.	C. G. Carver, Foreman."

The plaintiff then followed with evidence from the minutes of the board of commissioners of Mercer county, showing, in substance, that on June 23, 1852, the commissioners appointed three persons " as managers or directors of the stock subscribed by the county of Mercer to the Pittsburgh & Erie Railroad Co.;" that on September 22, 1852, one of the commissioners

Statement of Facts.

attended directors' meeting in New Castle; that on September 5, 1853, the commissioners all met, and in pursuance of the resolution of June 23, 1852, commissioners Pennock and Duncan signed bonds to the Pittsburgh & Erie Railroad amounting to $150,000, and commissioner Cunningham, refusing to sign the bonds, had his reasons entered of record; that on October 8, 1853, the commissioners recalled the bonds issued on September 5th, and issued in their stead other bonds in favor of the company of smaller denominations; that the former bonds were then destroyed and the bonds last issued, Cunningham still refusing to sign them, were delivered to Samuel Goodwin, one of the directors of the Pittsburgh & Erie Railroad Co.; that on February 6, 1855, the commissioners appointed new directors for the stock of the county in the railroad company, and that on April 2, 1855, the directors of the county stock made a report showing abstracts of the proceedings of the company at its last two meetings.

After proving the signatures of commissioners Pennock and Duncan thereto, the plaintiff put in evidence bonds 101, 102, 185, which were of the form following:

"$100.　　　　UNITED STATES OF AMERICA.　　　　$100

"County of Mercer, Pennsylvania, No. 185.

"This bond issued for stock in the Pittsburgh & Erie Railroad Company, payable in twenty years from date at the city of New York. The faith, credit, and property of the county to the Pittsburgh & Erie Railroad Company pledged to the payment of the principal and interest.

"Know all men by these presents, that the county of Mercer, of the Commonwealth of Pennsylvania, is indebted to the Pittsburgh & Erie Railroad Company in the full and just sum of one hundred dollars, which sum of money said county agrees and promises to pay twenty years after date hereof to the said Pittsburgh & Erie Railroad Company or bearer, with interest at the rate of six per centum per annum, payable semi-annually on the first Mondays of January and July, at the office of the Ohio Life Insurance and Trust Company, in the city of New York, upon delivery of the coupons severally hereto annexed, for which payment of principal and interest well and truly to be made, the faith, credit, and property of said county of Mercer are hereby solemnly pledged under authority of the Act of

Assembly of this Commonwealth, entitled "A supplement to the Act incorporating the Pittsburgh & Erie Railroad Company," which said Act was approved the twenty-first day of April, 1846, and which said supplement became a law on the fourth day of May, 1852.

"In testimony whereof, and by reason of said Act and supplement of the Legislature of Pennsylvania, and the resolutions of the county commissioners in their official capacity, passed on the twenty-third day of June, 1852, the commissioners of said county have signed, and the clerk of said commissioners has countersigned these presents, and have hereto caused the seal of said county to be affixed this fifth day of September, A. D. 1853.

"J. D. McGILL,            (Signed)   J. W. PENNOCK,
  "Clerk of Courts.                   J. J. DUNCAN.
                    Commissioners of Mercer County."

The plaintiff thereupon rested.

A motion by the defendant for a judgment of nonsuit having been refused, the defendant offered to prove that, at the time of the maturity of the bonds in suit, the county had advertised in the Mercer Dispatch, and other newspapers, that it was ready to pay and would pay the bonds on presentation, and further that the county was then in funds and was prepared to pay all its outstanding bonds, and had been ever since.

Objected to, as not evidence of a tender, or sufficient evidence of a notice.

By the court: Offer refused; exception.

The case then closing on the testimony, the court MEHARD, P. J., after ruling that the bonds in the hands of innocent purchasers for value, without notice and before maturity, were collectible, directed the jury to return a verdict for the plaintiff for the amount of the bonds and the coupons attached, "reserving, however, for future consideration and determination, the question whether the plaintiff must show that he is an innocent purchaser for value, without notice of the illegality of the bonds."

The jury returned a verdict for the plaintiff for $1,336.76, subject to the question reserved. After argument of the question, the court, MEHARD, P. J., filed an opinion, wherein, after

citing and considering Mercer Co. v. Railroad Co., 27 Pa. 389 ; Mercer Co. v. Hacket, 1 Wall. 83 ; 1 Dillon on Mun. Corp., §§ 549, 550 ; Knight v. Pugh, 4 W. & S. 445 ; Hutchinson v. Boggs, 28 Pa. 294 ; Albietz v. Mellon, 37 Pa. 367 ; Hoffman v. Foster, 43 Pa. 137 ; Smith v. B. & L. Ass'n, 93 Pa. 19 ; Lerch Hardware Co. v. National Bank, 109 Pa. 240 ; Tiedeman on Com. Paper, § 303, the court concluded :

The question is not what was the moral status of the commissioners with respect to this transaction, but how were the rights of the county affected by it? We agree with the learned counsel of the defendant that this case is covered in all material points by the decision of our Supreme Court in Lerch Hardware Co. v. National Bank, 109 Pa. 240. There, a negotiable note was executed in the name of the Lerch Hardware Co., Limited. It was signed by the secretary and treasurer and countersigned by the chairman. An affidavit of defence was filed alleging that the note was given for a loan of the credit of the company, but without the knowledge and consent of any of the members of the company save the chairman, and that the consent in writing of a majority of the members was not given as required by the act under which the company was organized. The court below gave judgment for the plaintiff for want of a sufficient affidavit of defence, but the Supreme Court reversed this decision, on the ground that the allegations in the affidavit were sufficient to cast upon the plaintiff the burden of showing that he was a bona fide holder for value. The parallel is complete, and leads to the conclusion that the facts appearing in this case are sufficient to require of the plaintiff proof that he was an innocent purchaser for value before maturity.

It is contended by the learned counsel for the plaintiff that even though the facts in evidence might otherwise cast such a burden upon him, yet, inasmuch as there is no evidence that plaintiff had notice of such special matter as would put him to proof of his title, the usual presumption in his favor must prevail. It is true, the defendants did not give the plaintiff such notice. For, even if the affidavit of defence be sufficient in substance and competent for that purpose, it was not given in evidence, and therefore cannot be considered : Maynard v. Bank, 98 Pa. 250. It is also true that ordinarily a plaintiff is

not required to prove himself a bona fide holder for value of
negotiable paper, unless he has had notice of the special mat-
ter on which the defendant relies : Beltzhoover v. Blackstock,
3 W. 20–27 ; Albietz v. Mellon, 37 Pa. 367. But, when the
evidence is indicated by the plea, and the plaintiff had knowl-
edge of the facts relied upon, we take it the rule would not
hold.

The plea in this case is non-assumpsit, and the defendant re-
lies upon the fact that there was no promise by the county of
Mercer to pay these bonds ; that they are not the bonds of Mer-
cer county, as the plea implies. On the trial, the plaintiff,
knowing that it was not sufficient to simply prove execution
of the bonds by the county commissioners, gave in evidence
the act of May 4, 1852, and the action of the grand jury, in
order to show the authority of the commissioners to execute
the bonds. This evidence showed that the commissioners had
not such authority. It then became necessary for the plaintiff,
according to his own showing, to make proof of further facts
which would estop the defendant from denying the power of
the commissioners to issue the bonds, to wit, that he purchas-
ed for value, in the ordinary course of business, before matur-
ity, relying upon the act of assembly and the contents of the
bonds. We think, therefore, the plaintiff cannot object to the
burden which the plea and his own evidence imposed.

It is now considered that the question reserved must be de-
cided against the plaintiff. It is accordingly ordered that judg-
ment be entered in favor of the defendant and against the
plaintiff, non obstante veredicto.

—Exception having been sealed, and judgment having been
entered as directed, the plaintiff took this appeal, specifying
that the court erred in directing judgment for the defendant,
non obstante veredicto, and not directing judgment for the
plaintiff on the verdict.

*Mr. Johnson Pearson*, for the appellant.

That the bonds were negotiable, counsel cited : Mercer Co.
v. Hacket, 1 Wall. 83–95 ; Beaver Co. v. Armstrong, 44 Pa.
63 ; Gibson v. Lenhart, 101 Pa. 522 ; s. c. 111 Pa. 624 ; Kerr
v. Corry, 105 Pa. 282 ; Lexington v. Butler, 14 Wall. 282 ;
Carr v. Le Fevre, 27 Pa. 413 ; Diamond v. Lawrence Co., 37

Opinion of the Court.

Pa. 353. That the holder was prima facie entitled to recover on their production: Miller v. Race, 2 Sm. L. C. 523; Holme v. Karsper, 5 Binn. 469; Beltzhoover v. Blackstock, 3 W. 20; Knight v. Pugh, 4 W. & S. 445; Brown v. Street, 6 W. & S. 221; Lerch Hardware Co. v. National Bank, 109 Pa. 240; 2 Greenl. Ev., §§ 155, 172; Story on P. N., §§ 181, 196; 1 Sand. Pl. & Ev., 586; Phelan v. Moss, 67 Pa. 59; Albietz v. Mellon, 37 Pa. 367; Penn Bank v. Frankish, 91 Pa. 339; Snyder v. Riley, 6 Pa. 168; Hutchinson v. Boggs, 28 Pa. 294. And could not be held to prove consideration, on the trial, unless previously notified that he would be required to do so: 2 Stark. Ev., 221; 1 Sand. Pl. & Ev., 587; Story on P. N., 181–196; Holme v. Karsper, 5 Binn. 469; Knight v. Pugh, 4 W. & S. 445; Beltzhoover v. Blackstock, 3 W. 20; Brown v. Street, 6 W. & S. 221; Albrecht v. Strimpler, 7 Pa. 476; Dingman v. Amsink, 77 Pa. 114; Jarden v. Davis, 5 Wh. 337. And not then, as part of his original case: 2 Stark. Ev., 221; Jarden v. Davis, 5 Wh. 337; Albietz v. Mellon, 37 Pa. 367; Snyder v. Riley, 6 Pa. 164.

*Mr. A. B. Thompson* (with him *Mr. S. H. Miller* and *Mr. Q. A. Gordon*), for the appellee.

Counsel cited: (1) Smith v. Sac Co., 11 Wall. 139; Stewart v. Lansing, 14 Otto 505. (2) Beltzhoover v. Blackstock, 3 W. 20.

OPINION, MR. JUSTICE STERRETT:

This action of assumpsit was brought March 2, 1888, on three bonds of the county defendant, dated September 5, 1853, for $100 each, payable to the Pittsburgh & Erie Railroad Company or bearer, at the office of the Ohio Life Insurance & Trust Company in New York, twenty years after date, with interest semi-annually, etc. The bonds purport to have been issued under authority of the act of May 4, 1852, entitled " A supplement to an act incorporating the Pittsburgh & Erie Railroad Company, approved April 21, 1846," and are part of the same issue of bonds which was the subject of contention in Mercer Co. v. Railroad Co., 27 Pa. 389. As stated in the affidavit filed on behalf of the county, the defence set up by it was " that the issuance of the bonds upon which said claim is founded

was without authority of law and therefore void, and created no legal liability on the county to pay the same, or any part thereof." The pleas were non-assumpsit and statute of limitations.

To maintain the issue on his part, the plaintiff gave in evidence said act of April 21, 1846, and the supplement thereto of May 4, 1852, authorizing the county defendant, under certain restrictions, limitations and conditions, to subscribe for the capital stock of the Pittsburgh & Erie Railroad Company, etc.; also the record of the Court of Quarter Sessions of the county showing the. action of the grand jury in relation to the subscription, the minutes of the county commissioners showing the appointment of managers or directors of the railroad company, etc., the making of bonds including those in suit, and the delivery of same to the company. He then put in evidence the bonds in suit, with coupons attached, and rested. No evidence was introduced by the defendant.

The learned judge, after instructing the jury that the bonds were collectible in the hands of innocent purchasers for value before maturity, directed them to find in favor of the plaintiff for the amount of the bonds and coupons, with interest, etc., and reserved for future consideration the question "whether the plaintiff must show that he is an innocent purchaser for value, without notice of the illegality of the bonds." The jury accordingly rendered a verdict for $1,333.76 in favor of plaintiff. The court afterwards entered judgment in favor of defendant on the question of law reserved, non obstante veredicto. That action of the court is the only subject of complaint in the several specifications of error.

The record evidence introduced by the plaintiff in this case presented precisely the same facts that were before this court in Mercer Co. v. Railroad Co., supra, and upon which it was then adjudged that the bonds were issued without authority of law, and were therefore void. The legal effect of the evidence showing the illegality of the bonds is of course the same as if it had been introduced by the defendant. In other words, the position of the plaintiff is the same as if he had made out a prima facie case entitling him to a verdict, and the defendant had then proved the facts upon which this court in the case above cited, held that the county commissioners had no author-

ity to issue the bonds. The plaintiff having thus, by his own evidence, established the fact that he is the holder of bonds issued without authority of law, it necessarily followed that he was not entitled to recover without first showing that he was an innocent purchaser of the bonds in suit for value and without notice of their illegality. No attempt was made to do that, and for that reason the learned president of the Common Pleas entered judgment in favor of the defendant, non obstante vere· dicto. In doing so we think he was clearly right. There is no escape from that conclusion, unless we are prepared to overrule the case referred to, and now hold that the bonds in question were regularly and legally issued. We are not disposed to take such a radical departure as that would be, because, in the first place, some respect is due to the maxim stare decisis ; and, secondly, because it is far from being clear that the adjudication referred to was erroneous.

The supplement of May 4, 1852, declares that subscriptions to the capital stock of the railroad company shall be made sub-ject to the following restrictions, limitations and conditions, and in no other manner or way whatsoever, viz.: All such subscriptions shall be made by the county commissioners *after*, and not *before*, the *amount* of such subscriptions shall have been *designated*, advised, and recommended by the grand jury ; and the amount of such subscription, ordered and designated as aforesaid, may be made payable either in money or in the bonds of the county so subscribing. The grand jury signed a paper saying they would recommend the commissioners to subscribe to the capital stock of the company to such amount, and under such restrictions, as may be required by the act, to an amount not exceeding $150,000. Without any other authority than that, the commissioners subscribed for $150,000 of the capital stock, issued bonds of the county to that amount, and delivered the same to the railroad company in payment of the subscrip-tion.

Speaking for the court in the case referred to, Chief Justice LEWIS said : " It is impossible to read the act of May 4, 1852, without perceiving that all discretionary power touching the subscription to the stock was given exclusively to the grand jury. They were directed to designate the amount of the sub-scription to be made ; and, when they did so designate the

amount, and advise and recommend the subscription, it was imperative on the commissioners to obey.  The language of the act is that the subscription 'shall be made' by the county commissioners.  The mandate is repeated in the clause declaring that the subscription shall be made after the grand jury have designated, advised, and recommended the amount.  It is indicated in the express prohibition of any subscription before the amount is so designated by the grand jury. . . . . That the action of the grand jury was intended to be mandatory—a command and not merely an authority—is manifest from what has already been said.  The advice and recommendation of the grand jury was to be regarded as an order which the commissioners were not at liberty to disobey," etc.  The conclusion was thus reached that all discretionary power touching the subscription was given *exclusively* to the grand jury, and they could not transfer any part of it to the county commissioners or any other persons ; that a mere recommendation by the grand jury to subscribe to such stock to an amount not exceeding a specific sum named, was not a compliance with the provisions of the act and conferred no authority upon the commissioners to make any subscription whatever ; and that such a subscription, made without any designation by the grand jury of the amount to be subscribed, was without any competent authority, and therefore void.  This appears to be a correct construction of the act, and the only one of which it is fairly susceptible ; but, whether right or wrong, it was given in a case involving the validity of the issue of bonds, including those now in controversy, and it is plainly our duty to accept the construction then put upon the act as final and conclusive. The specifications of error are not sustained.

Judgment affirmed.