Emily Ruth BALLINGER,
Plaintiff-Appellant,

v.

NORTH CAROLINA AGRICULTURAL EXTENSION SERVICE, North Carolina State University; Board of Warren County Commissioners; Warren County; Hugh L. Liner, Chester D. Black, Paul E. Dew, Russell G. King; individually and as Agents of NCAES and NCSU; Bruce R. Poulton, individually and as Chancellor of NCSU; W.J. Harris, Clyde R. Edwards, William T. Skinner, III, Herbert C. Harris, George E. Shearin, Sr., individually and as Warren County Commissioners; Glenwood Newcome, individually and as Agent of Board of Warren County Commission and Other Co-Conspirators here unnamed, individually, Defendants-Appellees.

No. 86–2142.

United States Court of Appeals,
Fourth Circuit.

Argued March 2, 1987.
Decided April 9, 1987.

Max Dewey Ballinger, Greensboro, N.C., for plaintiff-appellant.

Edwin Marion Speas, Jr., Sp. Deputy Atty. Gen., North Carolina Dept. of Justice (Lacy H. Thornburg, Atty. Gen., Raleigh, N.C., on the brief), for defendants-appellees.

Before HALL and WILKINS Circuit Judges, and TIMBERS, United States Circuit Judge for the Second Circuit, sitting by designation.

TIMBERS, Circuit Judge:

Emily Ruth Ballinger ("appellant") appeals from a judgment entered May 22, 1986 in the Eastern District of North Carolina, Terrence W. Boyle, *District Judge*, which granted summary judgment in favor of appellees North Carolina State University, North Carolina Agricultural Extension Service, Chancellor Bruce R. Poulton, Dr. Hugh L. Liner, Dr. Chester D. Black, Dr. Paul E. Dew and Russell C. King ("appellees") in an action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (1982); the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* (1982 & Supp. III 1985); 42 U.S.C. § 1985 (1982); 42 U.S.C. § 1983 (1982); and a pendent breach of contract claim.[1]

The court held that appellant had failed to establish a prima facie case of discrimination based on sex and, accordingly, was barred from bringing a claim under Title VII. The court also held that appellant had failed to establish a prima facie case of age discrimination under the Age Discrimination in Employment Act ("ADEA"). The court further held that appellant did not have standing to assert a conspiracy claim pursuant to § 1985(3) because she was not a member of a class to which the provisions of that statute applied. The court dismissed appellant's § 1983 claim because the claim was predicated upon the erroneous assumption that her statutory rights had been violated. Finally, the court dismissed the pendent breach of contract claim, holding that appellant was not an intended third-party beneficiary to the contract between the State and the Warren County Board of County Commissioners.

On appeal appellant argues: first, that there is a genuine issue of material fact as to whether appellant established a prima facie case of discrimination based on sex; second, that there is a genuine issue of material fact as to whether appellant established a prima facie case of discrimination based on age; third, that appellant is a member of a class protected by § 1985 and

1. At the commencement of this action appellant named various state and local government agencies, officers and employees as defendants. Both the state-level and the local-level defendants moved for summary judgment. The motion of the state-level defendants was granted in its entirety, while the motion of the county-level defendants was granted in part and denied in part. Following this ruling, appellant and the local-level defendants entered into a settlement of the case as it applied to them. On September 8, 1986 appellant and the local-level defendants filed a stipulation of voluntary dismissal with prejudice as to all of appellant's claims against the local-level defendants. Appellees in the present case, therefore, are the state-level defendants and consist of: North Carolina State University; The North Carolina Extension Service; Chancellor Bruce R. Poulton, Dr. Chester D. Black, Director of the Extension Service; Dr. Paul E. Dew, Assistant Director of the Extension Service; Dr. Hugh L. Liner, District Extension Chairman for the North Central District; and Russell G. King, County Extension Chairman, Warren County.

the court therefore erred in dismissing that claim; fourth, that, because there are genuine issues of material fact as to discrimination based on sex and age, the dismissal of appellant's § 1983 claim was error; and, fifth, that the court erred in its determination that appellant was not a third-party beneficiary to the contract.

We hold that there are no genuine issues of material fact as to whether appellant established a prima facie case of discrimination under either Title VII or ADEA. Summary judgment therefore was appropriate. We also hold that appellant has not made a particularized showing of participation in a conspiracy as required by § 1985. We have considered appellant's remaining claims of error and have concluded that they are without merit.

We affirm.

I.

We summarize only those facts believed necessary to an understanding of the issues raised on appeal.

The North Carolina Extension Service ("Extension Service") is a division of the School of Agriculture and Life Sciences of North Carolina State University ("NCSU"). The Extension Service provides agricultural, home economics and other similar services to the people of the State. There are local extension programs in all 100 counties of North Carolina.

At the county level, the supervisor of the local Extension Service is called the County Extension Chairman ("County Chairman"). When a vacancy exists for a County Chairman position the District Extension Chairman meets with the Board of County Commissioners ("the County Board") for the county affected to discuss the qualifications required for the County Chairman for that particular county. A vacancy announcement is then circulated, requesting that qualified persons apply for the position.

Written applications are received and screened by employees of the Extension Service in order to determine which applicants possess the qualifications believed necessary. The applicants selected are then scheduled for interviews.

The interviews are conducted by the Director of the Extension Service, the Associate Director, the Assistant Director for County Operations and the District Extension Chairman for the affected county. These persons develop through consensus a recommendation for presentation to the County Board. The County Board then interviews the person or persons recommended and makes the final hiring decision.

The process established by the Extension Service for filling county chairman positions was followed in selecting the County Chairman for Warren County, the position at issue in the present case.[2]

In February 1982 L.C. Cooper, the County Chairman for Warren County, announced his plans to retire from that position. At the time of Cooper's announcement appellant was employed by the Warren County Extension Service as the Home Economics Extension Agent. She was a fifty-five year old white female and had been employed by the Warren County Extension Service for approximately thirty-one years. Russell King was a co-worker of appellant who had been employed by the Warren County Extension Service as Associate Agricultural Extension Agent for approximately two years. King was a thirty-four year old white male. Both appellant and King applied for the position vacated by Cooper.

On March 16 Dr. Dew wrote to both appellant and King informing them that they were to be interviewed on March 23 by the screening panel. This panel, composed of Dr. Dew, Dr. Black and Dr. Liner, interviewed both applicants on that date. At the conclusion of the interviews the screening panel determined that, subject to the County Board's willingness to accept a

2. The only deviation was in the membership of the screening panel. Since the position of Assistant Director of County Operations was va-  cant in 1982, appellant was interviewed by three persons instead of four.

dual recommendation, it would recommend both appellant and King for the position. On March 30 Dr. Liner inquired of the County Board whether it would accept two recommendations from the screening panel. Dr. Liner refused to reveal the identities of the favored applicants. On April 2 the County Board advised Dr. Liner that it had agreed to receive two recommendations for consideration.

On April 5 the County Board met in executive session and interviewed appellant and King. Dr. Liner attended the interviews as a representative of the Extension Service. During the meeting, but prior to any final decision, a member of the County Board asked Dr. Liner how many women were serving as County Chairmen and about the relative performances of males and females. Dr. Liner indicated that there were six or seven women serving and he understood their average performance to be the same as the average performance of males.

At the conclusion of the interviews the County Board selected King as the Warren County Extension Chairman. Dr. Liner issued a press release announcing King's selection.

Shortly after the announcement appellant filed a grievance pursuant to the personnel policy of the Extension Service. On September 9 a panel was convened to take evidence. The panel found that appellant had been discriminated against on the basis of sex and age. The panel further found that the discrimination had been unintentional. Dr. Black, in his position as Director of the Extension Service, rejected the panel's report and asked it to reconvene for the purpose of making specific factual findings as to the discrimination. The panel reconvened on October 18 and made findings and recommendations. The panel stated that its findings were based on appellant's evidence in view of the lack of any contrary evidence submitted by the Exten-

sion Service. On November 15 Dr. Black again rejected the report of the panel. This rejection was ratified by Chancellor Poulton on January 31, 1983.

At the same time that she initiated the grievance procedure, appellant filed a claim of employment discrimination with the Equal Employment Opportunity Commission ("EEOC") which issued a right-to-sue letter on December 9, 1983. The letter was issued by EEOC without making its own findings.[3]

On March 8, 1984 the instant action was commenced. The complaint alleged violations of Title VII, ADEA, §§ 1983 and 1985 of the Civil Rights Act and a pendent breach of contract claim. On March 29, 1985 appellees moved for summary judgment. On May 22, 1986 the motion was granted as to all of appellant's claims. This appeal followed.

For the reasons stated below we affirm the order and judgment of the district court granting summary judgment in favor of appellees.

## II.

### (A) *Standard of Review*

■ The standard that an appellate court applies in reviewing an order which grants summary judgment is the same as that which governs the district court's initial action under Fed.R.Civ.P. 56(c). Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. The facts, and the inferences to be drawn from the facts, must be viewed in the light most favorable to the party opposing the motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir.1985). We have emphasized repeatedly the drastic nature of the summary judgment remedy and have held that it should not be granted unless it is perfectly clear that there are no genuine issues of

---

**3.** Appellant filed a second claim with EEOC in October 1982 after receiving a poor Performance Review. In this claim she alleged that the poor review was in retaliation for both the filing of her grievance and the initial claim filed with EEOC. A right-to-sue letter with respect to this claim was issued by EEOC on December 9, 1983. EEOC made no findings of its own as to this claim. The district court did not specifically address the retaliation issue in its opinion. Nevertheless, a review of the entire record leads us to conclude that the claim is without merit.

material fact in the case. *Pierce v. Ford Motor Co.*, 190 F.2d 910, 915 (4th Cir.), cert. denied, 342 U.S. 887 (1951). Further, since "summary judgment is seldom appropriate in cases wherein particular states of mind are decisive as elements of [a] claim or defense", *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir.1979), courts must take special care in cases such as the instant one because motive often is the critical issue in employment discrimination cases. Nevertheless, "[t]he fact that motive is often the critical issue in employment discrimination cases does not mean that summary judgment is *never* an appropriate vehicle for resolution." *International Woodworkers of America v. Chesapeake Bay Plywood Corp.*, 659 F.2d 1259, 1272 (4th Cir.1981) (emphasis in original). This is so because "... the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 106 S.Ct. 2505, 2510 (1986) (emphasis in original). We apply these principles to the instant case.

### (B) *The Title VII Claim*

The Supreme Court repeatedly has set forth the controlling legal standards with respect to the burden of producing evidence in a Title VII disparate treatment case such as this one:

"First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason for the employee's rejection.' ... Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination."

*Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252–53 (1981)

(quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973)). These standards, which allocate evidentiary burdens, serve to sharpen and focus the presentation of proof in all Title VII cases.

In order to establish a prima facie case of employment discrimination based on gender, appellant must have demonstrated, by a preponderance of the evidence, that she was a member of a protected class who was qualified for an available position but was rejected under circumstances giving rise to an inference of unlawful discrimination. *Burdine, supra*, 450 U.S. at 253. In granting summary judgment in favor of appellees, the district court concluded that appellant failed to adduce sufficient evidence to establish a prima facie case because she was *not rejected* by appellees. Rather, the screening panel *recommended* her for the Warren County chairmanship. The court further held that there were no circumstances which gave rise to an inference of a discriminatory animus. Thus, we must determine whether the grant of summary judgment here at the prima facie stage was precipitous. We answer the inquiry in the negative.

Appellant recognizes that the dual recommendation to the County Board in and of itself, was not discriminatory. She argues, however, that such recommendation was merely a ploy to escape liability under Title VII. She asserts that she has set forth adequate circumstances from which we should infer discriminatory intent. In effect, appellant invites us to disregard the fact that she was not rejected, but was recommended, for the promotion. We decline appellant's invitation.

In *Lovelace v. Sherwin-Williams Co.*, 681 F.2d 230 (4th Cir.1982), we held that a plaintiff may establish her discrimination case in either of two ways: first, through direct evidence of discrimination or, second, through the cumulative effect of indirect evidence of her employer's motivation. It is beyond cavil that there was no direct evidence of discrimination in the instant case. Our review of the factors which appellant contends are sufficient indirect

evidence of discriminatory motivation leaves us with the firm conviction that there was no indirect evidence of discrimination based on gender in this case. For example, appellant contends that it was "statistically documented" that the Extension Service discriminates against women, but she failed to produce the statistical evidence. She then claims that we may infer discriminatory motivation from the fact that Dr. Black, Dr. Dew and Dr. Liner "attended a political caucus in support of Russell King." Appellant offered no concrete evidence to support this conclusory allegation. In contrast, appellees produced sworn statements that the meeting was for the legitimate purpose of discussing a livestock agent for Warren County, and that a part of the duties of these three individuals required them to meet with farmers to discuss the farmers' various requirements. Appellant next claims that appellees permitted King to file a second resume in support of his candidacy from which we should infer a discriminatory intent. The second resume, however, was submitted after the decision to recommend both appellant and King to the County Board already had been made. Finally, appellant claims that the grievance committee's finding of discrimination created a genuine issue of material fact, precluding summary judgment. Appellant, however, attempts to gloss over the second finding of the grievance committee, namely, that the discrimination was unintentional. There is no support in that report for her claim of inferred discriminatory intent. The additional factors asserted by appellant similarly are without merit.

We hold that appellant did not offer evidence sufficient to defeat summary judgment at the prima facie stage.

### (C) *The ADEA Claim*

■ We have held that the substantive elements of an ADEA claim "are (a) that an employee covered by the Act (b) has suffered an unfavorable employment action by an employer covered by the Act (c) under circumstances in which the employee's 'age was a determining factor' in the action in the sense that ' "but for" [her]

employer's motive to discriminate against [her] because of [her] age, [s]he would not [have suffered the action].' " *Lovelace, supra,* 681 F.2d at 238 (quoting *Spagnuolo v. Whirlpool Corp.,* 641 F.2d 1109, 1112 (4th Cir.1981)).

The standards relating to the burdens and order of proof in Title VII cases apply as well to cases arising under ADEA. In analyzing appellant's ADEA claim, the district court held that appellant had failed to establish a prima facie case of age discrimination because she was not rejected by appellees for the position she sought nor had she demonstrated, through sufficient evidence, that the dual recommendation was a sham to cover up a discriminatory intent. We agree.

Appellant asserts as the foundation of her ADEA claim a question allegedly posed to her by a member of the screening panel at her initial interview. At that interview Dr. Black purportedly remarked to appellant, "from looking at this resume you are getting near or in the range of retirement." He then asked, "Why do you want the job of Extension Chairman with all the headaches, etc? I'm not in any way suggesting that you retire." Appellant wishes us to infer a discriminatory animus from this question. We decline to do so. Whatever negative consequences such a question might have in another context is open to speculation. In the instant case the question simply had no adverse impact on the decision of the screening panel because that panel *recommended* appellant to the County Board. Likewise, the record in this case is devoid of any evidence from which to infer that "but for" her age, appellant would have been the only individual recommended for the promotion.

We hold that appellant failed to establish a prima facie case of discrimination under ADEA.

### (D) *The Conspiracy Claim Under 42 U.S.C. § 1985(3)*

■ The surviving version of Section 2 of the Civil Rights Act of 1871, 42 U.S.C. § 1985(3), prohibits two or more persons

from conspiring to deprive another of equal protection of the laws or of equal privileges and immunities under the laws. The district court dismissed appellant's claim brought pursuant to § 1985(3) on appellees' motion for summary judgment both on the ground that appellant was not a member of a protected class within the coverage of § 1985(3) and on the ground that the alleged deprivation of a right created by Title VII could not be the basis for a claim under § 1985(3). *Great American Federal Savings and Loan Association v. Novotny*, 442 U.S. 366 (1979).

We find it neither necessary or appropriate to rule on the issue of appellant's standing under § 1985(3), for we agree with the dismissal on other grounds.

Quite simply, there is no proof, direct or indirect, of participation in any conspiracy by these appellees. Instead, appellant relies solely on the bare allegations of her complaint.

> "It is well settled that mere allegations of conspiracy, backed up by no factual showing of participation in a conspiracy, are insufficient to support such an action against a motion for summary judgment based on affidavits establishing the absence of any participation."

*Buschi v. Kirven*, 775 F.2d 1240, 1248 (4th Cir.1985).

A review of the affidavits submitted by appellees in support of their motion for summary judgment convinces us that the affidavits amply dispel the notion of any participation in the conspiratorial acts alleged by appellant in her conclusory manner.

The inquiry we must make is "... whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law". *Anderson v. Liberty Lobby, Inc., supra,* 106 S.Ct. at 2512. We find no evidence requiring submission to a jury on the issue of conspiracy.

We hold that the district court correctly granted summary judgment to appellees on appellant's § 1985(3) claim.

We have considered the remaining claims of error and have concluded that they are without merit.

### III.

To summarize:

We hold that the district court correctly held that appellant failed to establish a prima facie case of employment discrimination based on gender pursuant to Title VII; and that the district court correctly held that appellant failed to establish a prima facie case of employment discrimination based on age pursuant to ADEA. We also hold that the district court correctly dismissed appellant's claim brought pursuant to 42 U.S.C. § 1985(3).

AFFIRMED.