829 F.2d 1119
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Betty J. BLEVINS, Plaintiff-Appellant,
v.
WAVERLY PRESS, INC., Defendant-Appellee.
 No. 86-1236.
 United States Court of Appeals, Fourth Circuit.
 Argued March 4, 1987.
Decided Sept. 16, 1987.
 
 1
 Susanne Koster Henley (Ann Hilliard Legum, on brief), for appellant.
 
 
 2
 Bruce Stephen Harrison (Stephen D. Shawe; Gary L. Simpler; Shawe & Rosenthal, on brief), for appellee.
 
 
 3
 Before JAMES DICKSON PHILLIPS and ERVIN, Circuit Judges, and RAMSEY, United States District Judge for the District of Maryland, sitting by designation.
 
 RAMSEY, District Judge:
 
 4
 Plaintiff Betty J. Blevins appeals the grant of summary judgment by the United States District Court for the District of Maryland in favor of defendant Waverly Press, Inc., on claims of age discrimination in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. Sec. 621 et seq., and breach of contract. Plaintiff argues that there were genuine issues of material fact that should have gone to a jury.
 
 
 5
 We affirm.
 
 I.
 
 6
 Ms. Blevins was employed by Waverly Press for over fifteen years before being fired in August, 1984, at age 48. In March, 1981, after ten years of copy editing in the company's Redactory Department, she and another employee were selected as Administrative Assistant/Redactors. This position required Blevins to assist the redactory management with administrative matters and to answer questions of her co-workers in addition to performing her own redacting work. She received excellent job evaluations as an Administrative Assistant/Redactor.
 
 
 7
 In March, 1984, Waverly Press decided to reorganize the management of the redactory. In June, 1984, the two Administrative Assistant/Redactor positions, whose job description expressly stated that there were no supervisory responsibilities were replaced by four Supervisor Redactors (originally the company announced there would be five supervisors), with a job description calling for supervision of up to fourteen redactors.
 
 
 8
 Eleven people,, including Blevins, applied for the positions. The ages of the four selected were 24, 38, 42, and 47. Blevins was 48. Waverly Press asserts that Blevins was not selected because of management's belief that she would not effectively lead and relate to employees and because of her record of tardiness. Blevins does not dispute that she was late more often than any other employee in the redactory. Nor has she countered the affidavits of her co-workers attesting to her inability to get along with others. (Although the co-workers were deposed, Blevins did not submit any of their testimony; she argues that the similarity of the affidavits should cast doubt on their credibility.)
 
 
 9
 With the creation of the Supervisor Redactor positions, the position of Administrative Assistant/Redactor was eliminated. Since she did not receive a supervisor position, Blevins was downgraded to a Senior Redactor position# resulting in a loss of salary.
 
 
 10
 In June, 1984, Blevins initiated a grievance under the company's internal grievance procedures. That grievance was ultimately found by the company president to be without merit. Blevins refused to respond to the requests of the 47-year-old woman selected as her supervisor. After numerous meetings with that supervisor and other members of the management of the redactory in which she continued to refuse to cooperate and to insist that she shOUld be given a position as supervisor, Blevins was terminated on August 31, 1984.
 
 
 11
 Blevins asserts that this termination was in response to her filing an internal grievance and because of her age.
 
 
 12
 Blevins also asserts that the termination violated the employment contract created by the company's employee handbook. The introduction to Waverly Press's employee handbook contains a disclaimer stating "although certainly not a contract? this handbook will serve a useful purpose if it introduces the new employee to his/her working ,environment and also serves as a reminder and reference for all employees." Blevins relies on language in the handbook that provides that "[e]xcept in those cases which call for immediate termination action, it is the practice of the Company to give at least one week's termination notice, if it becomes necessary to dismiss an employee." There follows a list of fifteen acts of misconduct "deemed reason for instant dismissal," of which only insubordination is arguably applicable to Blevins. There is no indication that the list is intended to be exhaustive.
 
 
 13
 The district court found that Blevins had not established a prima facie case of age discrimination and that she had not rebutted Waverly Press's non-discriminatory explanation for her termination. On the contract claim, the district court found that the handbook's disclaimer was effective, and that even if it were not, the language Blevins relied on was not an enforceable contract. We agree with the district court that Blevins did not meet her burden of presenting material evidence that the non-discriminatory explanation of her termination was pretextual and that the handbook's disclaimer precluded the treatment of the handbook as a contract, Accordingly, we affirm.
 
 II.
 
 14
 (A) Standard for Summary Judgment
 
 
 15
 Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment shall be granted if it appears that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." All evidence shall be viewed in the light most favorable to the plaintiff. Ross v. Communications Satellite Corp. 759 F.2d 355, 364 (4th Cir. 1985). But the plaintiff must meet her burden of proof by showing more than the existence of a scintilla of evidence; she must produce sufficient evidence for a reasonable jury to find in her favor. Anderson v. Liberty Lobby,l06 S. Ct. 2505, 2510 (1986). This standard "mirrors the standard for a directed verdict." Id.
 
 
 16
 Anderson specifically addressed the question of summary judgment in a case in which the defendant's state of mind was at issue. The Supreme Court concluded that the plaintiff has the burden of producing evidence that would support a jury verdict, "even where the evidence is likely to be within the possession of the defendant, as long as the plaintiff has had a full opportunity to conduct discovery." Id. at 2514. And Celotex Corp. v. Catrett, 106 S. Ct. 2548 (1986), held that once the defendant pointed out the absence of evidence of an essential element of plaintiff's case, the burden is on the plaintiff to make a sufficient showing of evidence of that claim to create a genuine issue of fact for trial. Id. at 2554. The application of summary judgment to claims of discrimination in this Circuit was recently reviewed in Ballinger v. North Carolina Agricultural Extension Service, 815 F.2d 1001 (4th Cir. 1987). Ballinger cautioned courts to take special care before granting summary judgment in employment discrimination cases, where motive is a crucial issue, id. at 1005, but it applied Anderson and upheld the grant of summary judgment where the plaintiff had failed to establish a prima facie case of discrimination. Other courts have upheld or granted summary judgment in cases in which the plaintiff failed to meet his or her burden of showing that the employer's proferred business reasons for its job action were merely a pretext. See Meiri v. Dacon, 759 F.2d 989 (2d Cir. 1985); Steckl v. Motorola, Inc., 703 F.2d 392 (9th Cir. 1983) ; Nash v. Jacqueline Cochran, Inc., 548 F. Supp. 676 (S.D.N.Y. 1982); McClain v. Mack Trucks, Inc., 532 F. Supp. 486 (E.D. Pa. 1982), aff'd, 707 F.2d 1393 (3d Cir.), cert. denied, 462 U.S. 1137 (1983); but see Chipollini v. Spencer Gifts, Inc., 814 F.2d 893 (3d Cir. 1987) (en banc), rev'g 613 F. Supp. 1156 (D.N.J . 1985) .
 
 
 17
 (B) ADEA Claim
 
 
 18
 In order to establish an ADEA claim# Blevins must establish that age was a determining factor' a but-for cause# of her non-promotion or termination. Ballinger, 815 F.2d at 1006; E.E.O.C. v. Western Electric Co., 1 713 F.2d 1011i 1014 (4th Cir. 1983); Cline v. Roadway Express, Inc., 689 F.2d 481, 485 (4tb Cir. 1982); Lovelace v. Sherwin-Williams Co., 681 F.2d 2301 238 (4th Cir. 1982). She may establish her claim either directly, which she has failed to do, or indirectly under the protocol established by McDonnell Douglas Corp. v. Green,411 u.s. 792, 802-04 (1973), and Texas Dept. of Community Affairs v. Burdine, 450 u.s. 248, 253 (1981)# and applied to ADEA cases in this Circuit by Smith v. University of North Carolina, 632 F.2d 3161 332 (4th Cir. 1980 ).
 
 
 19
 The district court held that the plaintiff failed to meet her initial burden of establishing a prima facie case under the McDonnell Douglas-Burdine protocol because she failed to establish that she was qualified for the position# failing "to demonstrate that she possessed the 'people skills' required to successfully perform this function." The district court also questioned whether the fact that the company had hired two other people in the protected class (over 40) effectively undermined her claim.
 
 
 20
 Viewed in the light most favorable to the plaintiff, however, Blevins did establish a prima facie case of age discrimination. She was within the protected age group. Her years of experience and very favorable evaluations as a redactor were sufficient to establish her as qualified, at least for the purposes of a summary judgment motion. She was denied a promotion and then terminated. Others# all younger# were promoted to the position. See Smith, 632 F.2d at 332; Holmes v. Bevilacqua, 794 F.2d 1421 147 (4th Cir. 1986) (en banc); Lovelace, 681 F.2d at 239; Gairola v. Commonwealth of Virginia Dept. of Gen. Servs.,753 F.2d 1281i 1286 (4th Cir. 1985).
 
 
 21
 Once the plaintiff establishes a prima facie case, the burden shifts to the employer to produce evidence that its decisions were based on legitimate, nondiscriminatory reasons. Burdine, 450 U.Sat 254; Smith, 623 F.2d at 333. Waverly Press met that burden b.y showing that Blevins had the worst record for tardiness in the redactory -certainly a cause for concern if the employees she was to supervise were expected to come in on time--and by producing extensive affidavits from co-workers concerning interpersonal problems, stating that they felt uncomfortable bringing problems to her and that at least two of them would have asked to be reassigned had she been chosen as their supervisor.
 
 
 22
 The burden then shifts back to the plaintiff to establish that the stated reasons were merely a pretext and that she was the victim of discrimination. United States Postal Serv. v. Aikins, 460 U.S. 711, 715-16 (1983); Burdine, 450 U.S. at 256; Lovelace, 681 F.2d at 240-41; Gairola, 753 F.2d at 1287.
 
 
 23
 Blevins did not meet her burden of producing evidence from which a reasonable trier of fact could conclude that age was the more likely explanation of the company's actions. She produced no direct or indirect evidence of age discrimination. She proffered no evidence challenging the credibility of the co-workers who asserted she had problems with interpersonal relations and no evidence that she had good interpersonal skills or that she was not consistently late. Nor has she produced any evidence that those promoted to the Supervisor Redactor positions had similar problems, nor any statistical evidence of a pattern of age discrimination by her employer. Her claim rests on her 48 years of age and the excellent evaluations she had received as an Administrative Assistant/Redactor. (Other pieces of evidence Blevins points to are: she had difficulty getting management to explain why she wasn't promoted; the redactory manager said that the supervisor positions would give "new" employees something to strive for; only four of the five positions originally announced were filled; and the company had a voluntary retirement program.) Such evidence is insufficient. Despite extensive discovery, plaintiff has been unable to produce evidence that would allow a trier of fact to draw a reasonable inference of intent to discriminate.
 
 
 24
 (C) Contract ClaimBlevin's contract claim is more easily disposed of. The disclaimer in the introduction to the handbook states that the handbook is "certainly not a contract ...." Since the district court's decision, the Maryland Court of Special Appeals, in Castiglione v. Johns Hopkins Hospital, 69 Md.App. 325, 517 A.2d 786 (1986), held that an express disclaimer of contractual intent in a personnel manual was sufficient to preclude an employee's justifiable reliance on the manual as the basis for an employment contract. Id., 69 Md. App. at 339-41; 517 A.2d 792-94.
 
 
 25
 Moreover, as the district court pointed out, the provisions in the handbook do not cover Blevin's termination. She claims that the company handbook created a contract not to dismiss employees unless dismissal is "necessary." But the section relied on is merely a statement of general policy, not a contractual offer.
 
 
 26
 Therefore, as a matter of law, there was no breach of contract.
 
 III.
 
 27
 To summarize, we hold that, although the district court was incorrect in finding that Ms. Blevins had not established a prima facie case of age discrimination, it correctly held that she failed to meet her burden of producing evidence from which a reasonable trier of fact could find that the reasons offered by Waverly Press for her non-promotion and termination were merely pretextual and that the company was actually motivated by age discrimination. We further hold that the district court was correct that the disclaimer in the employee handbook was sufficient under Maryland law to preclude justifiable reliance on that handbook as the basis for an employment contract. Accordingly, the judgment of the district court is
 
 
 28
 AFFIRMED.