**Tyrone SHELTON, Plaintiff,**

v.

**Ronald ANGELONE, et al., Defendants.**

**No. CIV. A. 7:99–CV–00750.**

United States District Court, W.D. Virginia, Roanoke Division.

March 21, 2001.

Tyrone Shelton, Pro se.

Christopher Garrett Hill, Atty. General's Office, Richmond, VA, for Plaintiff.

Heather M. Kofron, David Ernest Boelzner, Wright, Robinson, Osthimer & Tatum, Richmond, VA, for Defendant.

## MEMORANDUM OPINION

TURK, District Judge.

Plaintiff Shelton, a Virginia inmate proceeding *pro se*, brings this action under the Civil Rights Act, 42 U.S.C. § 1983, with jurisdiction vested under 28 U.S.C. § 1343. In his complaint, plaintiff alleges, among other violations, that the defendants used excessive force against him, denied him medical treatment for resulting injuries, violated his due process rights in changing his custody classification, and denied him medically prescribed tinted glasses. One defendant, Nurse Mullins, has filed a motion to dismiss. The remaining defendants, who are security officers and administrators, have filed a motion for summary judgment.[1] Defendants raise several defenses. However, all the defendants argue that plaintiff's claims are barred under a one year statute of limitations, Virginia Code § 8.01–243.2. The plaintiff sought to engage in discovery, but the court granted defendants' motions for protective order, pending the court's ruling on the statute of limitations issue. The plaintiff has also filed responses to defendants' motions. Upon review of the record, the court denies the motion to dismiss and the motion for summary judgment on the ground that plaintiff's claims are barred by the statute of limitations. The court also denies the motion for summary judgment on the ground that the nonmedical defendants are entitled to qualified immunity as to the excessive force, medical

and due process claims raised in Claims 1, 6, 8, 9, 10, 12 and 13. However, the court summarily dismisses all other claims against the nonmedical defendants, pursuant to § 1915(e)(2), for failure to state a claim. The court grants Mullins' motion to dismiss (regarding Claims 2 and 3). Finally, the court dismisses all claims against Defendant Deeds and Claims 5 and 11, pursuant to Rule 4(m) of the Federal Rules of Civil Procedure. The court shall allow the parties to engage in discovery as to the remaining claims and to file any supplemental evidence or argument before considering the remainder of the pending summary judgment motion ripe for disposition.

### I.

The court construes Shelton's pleadings as raising the following claims:

1. Defendants Fleming, Taylor and Pientka used excessive force against Shelton on September 21, 1998.

2. Defendant Mullins denied Shelton adequate medical treatment for injuries received in the alleged attack on September 21, 1998.

3. Defendant Mullins failed to report Shelton's injuries accurately as part of a conspiracy to cover up the September 21, 1998 incident.

4. Defendant Deeds, Fleming, Taylor and Pientka failed to provide Shelton access to medical treatment immediately after the September 21, 1998 incident.

5. Defendant Deeds knew of and tacitly endorsed the type of force used against Shelton.

6. Defendants Elswick and Bentley conspired to reclassify Shelton, with-

---

1. Hereinafter, the court shall refer to this group of defendants as the "nonmedical defendants."

out proper procedural protections, in violation of existing classification regulations and by use of false information, to a higher custody status to keep him at Red Onion State prison, where conditions impose an atypical hardship on him.

7. Defendants Elswick and Bentley violated equal protection by reclassifying Shelton the way they did.

8. On appeal, Defendants Deeds, Young and Bass upheld the unconstitutional reclassification decision by Elswick and Bentley.

9. Defendant Shortridge failed to ensure that officials followed state procedural protections and failed to invalidate the unconstitutional reclassification of Shelton once she was notified of it.

10. Defendant Rowlette refused to allow Shelton to have medically prescribed, tinted glasses with protective side shields.

11. Defendant Deeds failed to provide Shelton with an alternative method to litigate after a specialist diagnosed Shelton with a degenerative nerve condition in his hands that is aggravated by writing.

12. Defendant Johnson ignored state procedures when he changed the security classification system and failed to invalidate the unconstitutional reclassification of Shelton once he was notified of it.

13. Defendant Angelone failed to enforce the prior security classification system and failed to invalidate the unconstitutional reclassification of Shelton once he was notified of it.

## II.

In an action brought pursuant to 42 U.S.C. § 1983, a motion to dismiss the complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The allegations in the complaint should be construed in the light most favorable to the pleader. *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

Upon motion for summary judgment, the court must view the facts, and the inferences to be drawn from those facts, in the light most favorable to the party opposing the motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355 (4th Cir.1985). Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Federal Rule of Civil Procedure 56(c).

### A. Statute of Limitations

Several of Plaintiff Shelton's claims concern the following events that allegedly occurred more than one year before he filed this civil action. Shelton alleges that on September 21, 1998, upon his arrival at Red Onion State Prison (Red Onion), officers shocked him twice with an Ultron II electronic stun device and beat him with their hands while he was in handcuffs, shackles and waist chain and offering no physical resistance. He also alleges that shortly after the incident, Nurse Mullins viewed his resulting injuries (marks from the stun device and cuts to his wrists), offered no treatment and failed to record the incident accurately as part of a conspiracy to cover it up. Shelton also sues former Warden George Deeds for tacitly

endorsing the officers' behavior and sues Deeds and the alleged attacker officers for failing to procure medical treatment for his injuries.[2]

Defendants argue that Shelton's claims arising from the incident on September 21, 1998 are barred by the statute of limitations set forth in Virginia Code § 8.01–243.2. This provision reads as follows:

> No person confined in a state or local correctional facility shall bring or have brought on his behalf any personal action relating to the conditions of his confinement until all available administrative remedies are exhausted. Such action shall be brought by or on behalf of such person within one year after cause of action accrues or within six months after all administrative remedies are exhausted, whichever occurs later.

Defendants assert that this provision took effect in July 1999, months before Shelton's claims accrued. They also assert that claims of excessive force and denial of medical treatment fall under this provision because they relate to conditions of an inmate's confinement. Shelton did not sign and date his § 1983 complaint until October 4, 1999. Even accepting this date as the date of filing, pursuant to *Lewis v. Richmond City Police Dept.*, 947 F.2d 733 (4th Cir.1991), defendants argue that Shelton's excessive force and medical claims arising from the September 21, 1998 incident are barred under § 8.01–243.2 as he did not raise them within one year after he knew of the alleged injuries.

No federal statute of limitations applies in § 1983 actions. Title 42 U.S.C. § 1988 authorizes courts addressing actions under the Civil Rights Act to borrow limitations provisions under state law if application of

such statutes is consistent with federal law. Initially, the United States Supreme Court ruled that courts should apply the state limitation statute "most analogous" to each particular § 1983 case. *Board of Regents, Univ. of New York v. Tomanio*, 446 U.S. 478, 488, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980). This practice resulted in confusion and inconsistency, as courts variously applied limitation periods for contracts, common-law torts or other statutory claims, depending on attorneys' analogy arguments. *See Owens v. Okure*, 488 U.S. 235, 239–40, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989). A § 1983 litigant often did not know whether her claims were barred until a court ruled on her individual case. *Id.* Recognizing that the "most analogous" test frustrated the very purpose for limitation statutes, a predictable time limit in which to bring suit, the Supreme Court spoke again in *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). The Court in *Wilson* held that "§ 1988 requires courts to borrow and apply to all § 1983 claims the one most analogous state statute of limitations." *Owens*, 488 U.S. at 240, 109 S.Ct. 573, *citing Wilson*, 471 U.S. at 275, 105 S.Ct. 1938. The Court further found that because "§ 1983 claims are best characterized as personal injury actions," a state's statute of limitations for personal injury actions should be applied to all § 1983 claims. *Wilson*, 471 U.S. at 280, 105 S.Ct. 1938. Later, in *Owens*, the Court recognized continuing confusion and inconsistency of results in states that have more than one statute of limitations applicable to personal injury actions. 488 U.S. at 241, 109 S.Ct. 573. The Court held that in such states, "courts considering § 1983 claims should borrow the general or resid-

---

**2.** Shelton raises several other claims about alleged violations of his constitutional rights at Red Onion, but these claims arise from incidents that occurred within one year of the date upon which Shelton filed his § 1983 complaint. Therefore, the parties do not argue that any of Shelton's other claims are barred by § 8.01–243.2.

ual statute [of limitations] for personal injury actions." *Id.* at 250, 109 S.Ct. 573. In so ruling, the Court stated its intention to end all confusion over what state statute of limitations to apply to a § 1983 action. *Id.* Moreover, the Court expressly rejected an argument that where a § 1983 claim was "most analogous" to a specific intentional tort, the court should apply the limitation period for that specific tort rather than applying the general, residual limitation period for personal injury actions. *Id.* at 242–44, 109 S.Ct. 573.

■ Under *Wilson* and *Owens,* this court cannot find it appropriate to borrow the statute of limitations found in Virginia Code § 8.01–243.2 in addressing § 1983 actions filed by prisoners in Virginia. Clearly, a prisoner's claims under § 1983 that prison conditions, including excessive force and denial of medical treatment, violate his constitutional rights are analogous to the type of personal injury claims under Virginia law to which § 8.01–243.2 applies. However, Virginia has a "general or residual statute for personal injury actions," Virginia Code § 8.01–243(A). This provision reads as follows:

> Unless otherwise provided in this section or by other statute, every action for personal injuries, whatever the theory of recovery, and every action for damages resulting from fraud, shall be brought within two years after the cause of action accrues.

§ 8.01–243(A). The court concludes that under *Wilson* and *Owens,* the court must apply the two year limitation period set forth in § 8.01–243(A) to all § 1983 actions arising in Virginia, whether or not the plaintiff is confined in prison when he files the lawsuit. Adoption of alternative, personal injury statutes of limitations to § 1983 cases, depending merely upon whether the plaintiff is a prisoner at the time he files the action, would plunge litigants back into the very morass of unpredictable time limits and inconsistent results that *Wilson* and *Owens* sought to eliminate.[3] The parties do not dispute that Shelton's § 1983 claims accrued at the time of the incidents on and around September 21, 1998. *See Nasim v. Warden, Md. House of Correction,* 64 F.3d 951, 955 (4th Cir.1995)(en banc)(cause of action under § 1983 accrues and the statute of limitations begins running "when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action") As Shelton filed his § 1983 complaint on October 4, 1999, within two years of the events on September 21, 1998, none of his claims concerning these events are barred by the applicable statute of limitations, § 8.01–243(A). Accordingly, the court denies the nonmedical defendants' motion for summary judgment on the ground that Shelton's claims are time-barred. The court also denies Defendant Mullins' motion to dismiss on this ground.

**B. Failure to State a Claim**

The court screened Shelton's complaint, pursuant to 28 U.S.C. § 1915A, and determined that none of his claims as stated in the complaint could be dismissed for failure to state a constitutional claim. In his

---

**3.** For example, two male prisoners might suffer the same alleged constitutional violation while in prison. One man, released shortly thereafter, could file his § 1983 action as a nonprisoner any time within the two year limitation period under § 8.01–243(A). The other man, raising the same claims, but with more time left to serve on his sentence, would have to file his § 1983 action while still a prisoner, and would be required to do so within one year of the alleged constitutional violation (or within six months of the time when he exhausted administrative remedies) or be forever barred from doing so under § 8.01–243.2.

subsequent submissions in response to defendants' current motions, Shelton has greatly elaborated upon his allegations in support of his claims. Upon reconsideration of the complaint and Shelton's subsequent, more detailed submissions, the court finds that Shelton's allegations concerning denial of medical treatment after the September 1998 incident and certain of his allegations concerning his February 1999 security classification proceedings fail to state claims of constitutional dimensions and must be dismissed, pursuant to 28 U.S.C. § 1915(e)(2).[4] Under this provision, the court may dismiss an action filed *in forma pauperis* at any time for failure to state a claim upon which relief may be granted.

■■■ A prison official's deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97, 102, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). "Deliberate indifference" involves both an objective and a subjective component. The objective component is met if the deprivation is "sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). A medical need is sufficiently serious "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir.1999); *Sheldon v. C/O Pezley*, 49 F.3d 1312, 1316 (8th Cir.1995). The subjective component is met if a prison official "knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837, 114 S.Ct. 1970. *See Johnson v. Quinones*, 145 F.3d 164, 168–69 (4th Cir.1998)(because evidence did not show that doctors knew about inmate's pituitary gland tumor, failure to diagnose and treat it did not state Eighth Amendment claim even though inmate ultimately went blind). A claim concerning a disagreement between an inmate and medical personnel regarding diagnosis and course of treatment does not implicate the Eighth Amendment except in extraordinary circumstances. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir.1985). Questions of medical judgment are not subject to judicial review. *Russell v. Sheffer*, 528 F.2d 318 (4th Cir.1975). Moreover, mere malpractice does not state a federal claim, *Estelle*, 429 U.S. at 105–106, 97 S.Ct. 285, nor does mere negligence in diagnosis. *Sosebee v. Murphy*, 797 F.2d 179 (4th Cir.1986)

■■■ The Fourth Circuit Court of Appeals has held that to bring a medical treatment claim against non-medical prison personnel, an inmate must show that such officials were personally involved with a denial of treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct. *Miltier v. Beorn*, 896 F.2d 848 (4th Cir.1990); *Slakan v. Porter*, 737 F.2d 368 (4th Cir.1984); *Boyce v. Alizaduh*, 595 F.2d 948 (4th Cir. 1979). Prison personnel may rely on the opinion of the medical staff as to the proper course of treatment. *Miltier, supra; Smith v. Barry*, 985 F.2d 180, 184 (4th Cir.1993)(affirming directed verdict for prison guards not in position to "act meaningfully" with regard to inmate's medical needs).

■■■ Shelton's Claims 2 and 4 allege that Nurse Mullins and the security officers failed to provide Shelton with medical treatment after the alleged assault on Sep-

---

4. The court will address only the September 1998 medical claims here. *See* discussion of classification proceedings claims, *infra*.

tember 21, 1998. Shelton alleges that his physical condition after the attack "needed urgent medical care," that he had three small cuts on his right wrist (1–2 centimeters in length) which were bleeding, that the stun device left two sets of signature marks on his skin, that he got treatment only days later for these injuries, and that these injuries have left permanent scars. The medical records Shelton submits indicate that he saw the medical staff on September 24 concerning the cuts on his wrist and on September 28 concerning the signature marks. Treatment offered consisted of ointment and steri strips for the cuts. The records indicate that on September 28, medical staff examined the signature marks from the Ultron device and noted no infection, swelling, redness or drainage. Staff merely instructed Shelton to watch for specific signs of infection and offered no other treatment. The court cannot find that these allegations are sufficient to state constitutional claims under the standard set forth in *Estelle*. Shelton's allegations as a whole do not support a claim that the physical injuries evident on his body after the alleged assault qualified as serious medical needs such that Mullins must have known that lack of immediate treatment placed Shelton at any significant risk of harm. *Id.; Farmer, supra.* Accordingly, the court grants Mullins' motion to dismiss as to Claim 2 for failure to state a claim. *Conley, Rhodes, supra.* The nonmedical defendants were entitled to rely on Mullins' judgment as a medical staff member as to whether or not Shelton's injuries required treatment. *Miltier, supra.* Shelton certainly has not demonstrated that his injuries were so obviously serious as to put the security officers on notice that he needed immediate treatment. *Farmer, supra.* Accordingly, the court dismisses Claim 4, pursuant to § 1915(e)(2), for failure to state a claim upon which relief can be granted.

In Claim 3, Shelton alleges that Mullins failed to report the nature of the injuries Shelton suffered in the September 21, 1998 attack as part of a conspiracy to cover up the use of excessive force against Mullins. An essential element in any claim of conspiracy to deprive the plaintiff of his constitutional rights is an agreement to do so among the alleged co-conspirators. *Ballinger v. North Carolina Agricultural Extension Service,* 815 F.2d 1001 (4th Cir.), *cert. denied,* 484 U.S. 897, 108 S.Ct. 232, 98 L.Ed.2d 191 (1987). Without such a meeting of the minds, the independent acts of two or more wrongdoers do not amount to a conspiracy. *Murdaugh Volkswagen v. First National Bank,* 639 F.2d 1073 (4th Cir.1981). The plaintiff must allege facts which show that the defendants shared a "unity of purpose or common design" to injure the plaintiff. *American Tobacco Co. v. United States,* 328 U.S. 781, 66 S.Ct. 1125, 90 L.Ed. 1575 (1946). Where the complaint makes only conclusory allegations of a conspiracy under § 1983 and fails to demonstrate any agreement or meeting of the minds among the defendants, the court may properly dismiss the complaint. *See Woodrum v. Woodward County, Okl.,* 866 F.2d 1121 (9th Cir.1989); *Cole v. Gray,* 638 F.2d 804 (5th Cir.1981). Shelton fails to allege any facts showing that Mullins' failure to report Shelton's injuries resulted from any meeting of the minds between Mullins and the other defendants. The court finds that Shelton's conclusory allegations of conspiracy fail to state any claim of constitutional proportions. Moreover, Mullins' alleged choice to ignore state reporting procedures does not state any independent, constitutional claim, *see Weller v. Dep't of Social Services,* 901 F.2d 387 (4th Cir.1990)(violations of state law by state officials do not provide basis for constitutional claims under § 1983), nor does it support Shelton's

conspiracy argument. Finally, Mullins' careless failure to file a proper report states no constitutional claim, as mere negligence by prison officials does not implicate the Eighth Amendment. *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). Based on the foregoing, the court grants Mullins' motion to dismiss as to Claim 3.

### C. Qualified Immunity and § 1915(e)(2)

 The nonmedical defendants argue that they are entitled to a protective order against discovery because they have raised a defense of qualified immunity in their pending motion for summary judgment. They seek a continued stay of discovery until the court rules on the threshold issue of qualified immunity. *See Siegert v. Gilley*, 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991) and *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Under *Harlow* and *Siegert*, to show that they are entitled to summary judgment on the ground of qualified immunity before the court allows discovery, a defendant must establish that (1) the actions alleged by plaintiff fail state a claim that a constitutional right has been violated or that (2) the asserted right was not clearly established at the time of the alleged violation such that a reasonable officer in the defendants' position could not have known of the relevant legal standard. 457 U.S. at 818–19, 102 S.Ct. 2727 and 500 U.S. at 232–33, 111 S.Ct. 1789. "If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct." *Harlow*, 457 U.S. at 818–819, 102 S.Ct. 2727. To be clearly established for purposes of qualified immunity, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Upon review of Shelton's pleadings, the court concludes that defendants have not demonstrated entitlement to summary judgment on the ground of qualified immunity as to Shelton's constitutional rights to freedom from the use of excessive force, denial of medical treatment, and denial of due process. However, the court also finds that Claim 7 and certain aspects of other claims must be summarily dismissed, pursuant to § 1915(e)(2), for failure to state a claim.

 The court finds that the allegations in Claim 1 state a claim that defendants violated Shelton's clearly established constitutional right against use of excessive force. If Shelton can prove, as he alleges, that the defendants used a stun device on him and beat him while he was in full restraints and not offering any physical resistance and that the stun device and the beating caused him more than *de minimis* pain and/or injury, he will have established an Eighth Amendment claim regarding use of excessive force under the standards set forth in *Hudson v. McMillian*, 503 U.S. 1, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992)(When officials stand accused of excessive use of force, the key inquiry is "whether the force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm") *citing Whitley v. Albers*, 475 U.S. 312, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) and *Norman v. Taylor*, 25 F.3d 1259 (4th Cir.1994)(*de minimis* injury or pain can be conclusive evidence that the force used was also *de minimis* and, therefore, not violative of constitutional protections). These standards were clearly established at the time of defendants' alleged actions, and defendants have not offered any evidence or argument indi-

cating that they did not know these legal standards. Accordingly, the court denies the motion for summary judgment on the ground of qualified immunity as to Claim 1. *Siegert, supra.*

■ In support of Claims 6 through 9[5] and 12 and 13, Shelton relies on overlapping allegations of fact and a huge number of exhibits, submitted in response to defendants' summary judgment motion. Briefly stated, Shelton alleges that Defendants Bentley and Elswick conspired to reclassify Shelton to the highest possible security status under new state classification regulations by using false information about him in order to justify his permanent assignment to a super maximum security prison like Red Onion. He also alleges that they did not give him proper notice or opportunity to participate in the reclassification process. Shelton argues that at Red Onion, he was unable to participate in education and rehabilitation programs as required to earn the maximum amount of good conduct time against his sentence; thus, he argues, the reclassification imposed atypical and significant hardship upon him without the appropriate federal procedural protections. Shelton alleges that Defendants Deeds, Young, Bass, Shortbridge, Johnson and Angelone failed to correct the due process violations after Shelton notified them of the problem.

Defendants do not argue that Shelton's allegations fail to state a possible constitutional claim under *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995)(liberty interest created by state prison regulations only where case presents "a dramatic departure from the basic conditions" of inmate's indeterminate sentence) and *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974)(minimal procedural protection re-

quired before inmate can be deprived of liberty interest for administrative reasons). Defendants also do not argue that these legal standards were not clearly established at the time of the defendants' alleged actions or that reasonable officers would not have known of these standards. Defendants merely argue that, contrary to Shelton's allegations, they did provide Shelton all appropriate procedural protections and that they followed established prison procedures. Accordingly, the court cannot find that defendants are entitled to summary judgment on the ground of qualified immunity before the plaintiff has had an opportunity to engage in discovery and respond in full to the defendants' motion. The court denies the motion for summary judgment as to the due process claims included in Claims 6, 8, 9, 12 and 13.

■ Within Claims 6 through 9 and 12 and 13, however, Shelton also alleges some violations that do not state claims cognizable under § 1983. First, Shelton faults the officials for not following previously established administrative procedures in reclassifying him. He particularly complains that officials were bound to follow the prior procedures requiring security classification reviews to be annual; his reclassification came four months before his annual review would normally have been scheduled. The change in state procedures, by itself, fails to implicate any constitutionally protected right. An inmate has no federal constitutional right to any specific, state-created *procedural* protection. *See Hill v. Jackson*, 64 F.3d 163, 170–171 (4th Cir.1995)(there is no "protected liberty interest in the procedures themselves, only in the subject matter to which they are directed"); *Riccio v. County of Fairfax, Va.*, 907 F.2d 1459, 1469 (4th

---

**5.** As Claim 5 alleges constitutional violations by Defendant Deeds, who has not yet been served, no motion for dismissal or summary judgment is pending as to this claim.

Cir.1990)(state's failure to abide by its own law as to *procedural* protections is not a federal due process issue). Shelton's claims that the defendants violated his rights by failing to comply with, or changing, state procedures must be dismissed, pursuant to § 1915(e)(2), for failure to state a claim under § 1983.

■ Shelton's equal protection claims also fail. He does not allege facts showing that defendants treated him differently than they treated other inmates similarly situated. *Moss v. Clark*, 886 F.2d 686 (4th Cir.1989)(officials may treat similarly situated inmates differently, provided that the basis for the different treatment is rationally related to a legitimate state interest). Shelton seeks to compare himself to former inmates who were classified under the old procedures and incarcerated in institutions where they had access to rehabilitation and education programs that helped them make a successful transition into society. However, Shelton is not sufficiently similar in situation to former inmates. Rather, he must compare his treatment to the treatment given to other inmates reclassified under the new six-level custody classification system whose annual reviews for 1999 were scheduled after March 1, 1999. He has not alleged facts demonstrating that any such inmates were not reclassified in the same manner as he allegedly was. Accordingly, he fails to demonstrate any violation of equal protection by any of the defendants, *Moss, supra*, and the court dismisses all such claims, including Claim 7 in its entirety, pursuant to § 1915(e)(2), for failure to state a claim under § 1983.

■ In Claim 10, Shelton alleges that Defendant Rowlette ignored the orders of two doctors that Shelton be provided with tinted glasses with side shields and refused to allow Shelton to have such glasses. Shelton alleges numerous problems and symptoms that he suffers without the glasses because of the fluorescent lighting in his cell. Taking the allegations in the light most favorable to Shelton, the court finds that he has alleged facts stating a possible claim against Rowlette for deliberate indifference to a serious medical need. *See Farmer, Estelle, supra.* These standards were clearly established at the time of Rowlette's actions, and the defendant has not produced evidence indicating that he could not have known of this legal standard. Accordingly, the court denies defendants' motion for summary judgment on the ground of qualified immunity as to Claim 10.

## D. Discovery

Defendants argue that they are entitled to a stay of discovery until the court rules on their defenses of statute of limitations and qualified immunity. The court has determined that none of Shelton's claims are barred by the statute of limitations. The court has also determined that the defendants are not entitled to summary judgment on grounds of qualified immunity at this stage in the litigation on any of Shelton's remaining claims. Accordingly, the court will lift the protective order previously granted and direct defendants to respond to Shelton's requests for discovery. Shelton has filed numerous requests for subpoenas duces tecum. Inasmuch as these requests are directed at defendants to the action or may be considered as legitimate discovery requests to these defendants, the court construes Shelton's requests for subpoenas as requests for production, pursuant to Rule 34, Federal Rules of Civil Procedure.

## E. Defendant Deeds

■ The court has made every effort to aid the *in forma pauperis, pro se* plaintiff in accomplishing service upon former

Warden George Deeds. Counsel for the other nonmedical defendants refused to waive service for Deeds because the former warden is no longer employed with the VDOC and now allegedly resides in another state. The court obtained Deeds' last known address from the defendants in confidence and attempted service of process upon Deeds by mailing him the Notice of Waiver of Summons. Upon receiving no response by mail, the court directed the United States Marshal to attempt service of process upon Deeds at the address provided in confidence to the court. On February 13, 2001, the court received information indicating that the sheriff's office in the county where Deeds' last known address is located has been unable to accomplish service upon him because he no longer resides at the address provided.

Generally, Rule 4(m) of the Federal Rules of Civil Procedure allows the court to dismiss an action against a defendant if the plaintiff fails to accomplish service of process upon that defendant within 120 days after the complaint is filed. Rule 4(m) also permits the court to extend the service period for good cause shown. The court did extend the service period in Shelton's case, based on his inability to obtain Deeds' address. The court has also notified Shelton that if service could not be accomplished, all claims against Deeds would be dismissed. The court notes that more than one year has passed since Shelton filed the complaint against Deeds and that 120 days has passed since the court received Deeds' last known address and began attempting to accomplish service upon him. Shelton has moved the court to issue a writ of *capias ad respondendum* to have the sheriff arrest and hold Deeds until he responds to the complaint. However, Shelton offers no alternative address for Deeds where such a writ could be executed or where service could be accomplished. The court cannot order Deeds

arrested if no one can locate him. Accordingly, the court denies Shelton's motion for writ of *capias ad respondendum* and further finds that all claims against Defendant Deeds must be dismissed, pursuant to Rule 4(m). As Shelton raises Claims 5 and 11 only against Deeds, the court also dismisses these claims from the action altogether. An appropriate order shall be issued this day. The Clerk is directed to send certified copies of this memorandum opinion and accompanying order to plaintiff and to counsel of record for the defendants.

### ORDER

In accordance with the accompanying memorandum opinion, it is hereby

### ADJUDGED AND ORDERED

as follows:

(1) Defendants' motion to dismiss and motion for summary judgment on the ground of the statute of limitations shall be and hereby are DENIED.

(2) Defendant Mullins' motion to dismiss shall be and hereby is GRANTED.

(3) The following claims are hereby **DISMISSED**, pursuant to 28 U.S.C. § 1915(e)(2), for failure to state a claim upon which relief can be granted: Claim 4, Claim 7, all claims alleging only violations of state procedural law, and all claims alleging equal protection violations.

(4) The nonmedical defendants' motion for summary judgment on the ground of qualified immunity prior to discovery shall be and hereby is DENIED as to the following claims: Claim 1, Claim 6 (due process and conspiracy), Claims 8 and 9 (due process), Claim 10 (denial of special glasses) and Claim 12 and 13 (due

process). Defendants' motion for summary judgment as to these claims is **TAKEN UNDER ADVISEMENT**, pending completion of discovery.

(5) The court's previously entered protective order, staying discovery in this action until further order of the court, shall be and hereby is **VACATED**; plaintiff's motions to stay the protective orders are hereby **DENIED** as moot; and defendants are hereby **DIRECTED** to respond within thirty (30) days from the entry of this order to plaintiff's motions for discovery, listed below as styled by plaintiff and as file-stamped by the court,:

(a) Motion for issuance of subpoena duces tecum and request for admissions, filed March 8, 2000 (replacing discovery requests filed in October 1999);

(b) Exhibits to March 8, 2000 request for admissions, filed March 27, 2000;

(c) Motion for issuance of subpoena duces tecum, filed July 17, 2000;

(d) Motion for issuance of subpoena duces tecum, filed December 11, 2000;

(e) Request for admissions, filed December 11, 2000;

(f) Affidavit (correcting December 11, 2000 discovery request), filed January 19, 2001;

(g) Motion for issuance of subpoena duces tecum, filed January 19, 2001;

(h) Interrogatories and request for production of documents, filed January 19, 2001;

(6) Plaintiff's motions for issuance of subpoena duces tecum shall be and hereby are DENIED; his motions for such subpoenas are hereby construed as requests for production of documents, pursuant to Rule 34 of the Federal Rules of Civil Procedure; and defendants are hereby **DIRECTED** to respond to them as such.

(7) Plaintiff's motion for writ of *capias ad respondendum* shall be and hereby is DENIED.

(8) All claims against former Warden George Deeds and Claims 5 and 11 shall be and hereby are DISMISSED without prejudice, pursuant to Rule 4(m) of the Federal Rules of Civil Procedure, and all parties are hereby notified that Deeds is no longer considered a party to this action.

(9) For lack of good cause shown against a *pro se* litigant, defendants' motion for sanctions against plaintiff for discovery abuses shall be and hereby is DENIED.

(10) Defendants are hereby **DIRECTED** to submit any additional any supplemental evidence and argument within sixty (60) days from the entry of this order.

(11) Plaintiff is hereby **DIRECTED** to submit any additional argument or evidence in response to defendants' pending motion for summary judgment within sixty (60) days from the entry of this order.

The Clerk is directed to send certified copies of this order and the accompanying memorandum opinion to plaintiff and to counsel of record for the defendants.